UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 09-391 |
| KEVIN TYLER | SECTION "R" |

### ORDER AND REASONS

Kevin Tyler moves *pro se* for compassionate release.[1] The Government opposes the motion.[2] Because Tyler has not shown that he meets the requirements for compassionate release, the Court denies the motion. The Court also denies Tyler's motion to appoint counsel.[3]

### I.   BACKGROUND

On June 26, 2013, Tyler pleaded guilty to conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846.[4] According to the factual basis Tyler signed, federal agents intercepted him selling cocaine to co-conspirators.[5] On November 20, 2013,

---

[1]   R. Doc. 1115.
[2]   R. Doc. 1126.
[3]   R. Doc. 1143.
[4]   R. Doc. 781; R. Doc. 768.
[5]   R. Doc. 782.

the Court sentenced Tyler to 130 months' imprisonment,[6] to be followed by five years' supervised release.[7] On January 28, 2016, the Court reduced Tyler's sentence to 125 months' imprisonment under the First Step Act, 18 U.S.C. § 3582(c)(2), noting that the Guideline range had been lowered for Tyler's offense.[8] Tyler is incarcerated at FCI Ashland Kentucky.[9] He has a projected release date of October 6, 2022.[10]

## II. DISCUSSION

### A. Exhaustion

Before a federal court will assess the merits of a motion for compassionate release, defendants must show that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582. The Fifth Circuit has clarified that "all requests for compassionate release must be presented to the Bureau of Prisons before

---

[6] R. Doc. 810 at 2.
[7] *Id.* at 3.
[8] R. Doc. 907 at 1.
[9] *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited February 8, 2021).
[10] *See id.*

2

they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, No. 20-5997, 2020 WL 7132458 (U.S. Dec. 7, 2020). The defendant bears the burden of demonstrating exhaustion. *See, e.g.*, *United States v. Rodriguez*, No. 15-198, 2020 WL 5369400, at *2 (E.D. La. Sept. 8, 2020); *United States v. Murray*, No. 19-041, 2020 WL 4000858, at *2 (E.D. La. July 15, 2020); *United States v. Castro*, No. 15-309, 2020 WL 3076667, at *2 (E.D. La. June 10, 2020).

In addition, the Fifth Circuit has held that the exhaustion requirement is a "mandatory claim-processing rule." *Franco*, 973 F.3d at 468. Like other mandatory-claim processing rules, the Court must enforce the rule if a party properly raises the issue. *See id.*; *see also Pierre-Paul v. Barr*, 930 F.3d 684, 692 (5th Cir. 2019) ("A claim-processing rule is mandatory to the extent a court must enforce the rule if a party properly raises it."). The Government concedes exhaustion in this case.[11]

Tyler sent a request for compassionate release to the warden of FCI Ashland Kentucky on May 1, 2020,[12] and on July 21, 2020.[13] The record reflects that the warden denied Tyler's request on both occasions.[14] Because

---

| 11 | R. Doc. 1126 at 8. |
| 12 | R. Doc. 1126-3 at 1. |
| 13 | *Id.* at 2. |
| 14 | *Id.* at 1-3. |

3

Tyler has presented his request for compassionate release to the BOP, and because the Government concedes exhaustion, the Court proceeds to the merits of Tyler's motion.

### B. Extraordinary and Compelling Reasons

Courts may only grant compassionate release when "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). The relevant policy statement is set out in § 1B1.13 of the United States Sentencing Guidelines. The commentary to § 1B1.13 describes four "extraordinary and compelling reasons" that could warrant a reduced sentence: (1) medical conditions, (2) age, (3) family circumstances, and (4) "[o]ther [r]easons." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). The commentary further specifies that, to be sufficiently serious to warrant release, a medical condition must be a "terminal illness" or a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.3 cmt. n.1(A).

1. *Tyler's Medical Conditions*

Tyler argues that preexisting medical conditions place him at high risk for death or serious illness if exposed to COVID-19.[15] In *United States v. Thompson*, the Fifth Circuit noted that, "in some exceptional cases" courts "have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID." 984 F.3d 431, 434 (5th Cir. 2021). But there is no "unanimous" agreement in the courts that "every high-risk inmate with preexisting conditions" has demonstrated an extraordinary and compelling reason. *Id.* The *Thompson* court affirmed a denial of compassionate release for a defendant who suffered from hypertension, high cholesterol, and had previously suffered a stroke. *Id.* at 1.

Here, Tyler contends that his body mass index (BMI) is over 40,[16] and he suffers from hypertension.[17] The Centers for Disease Control and Prevention (CDC) lists "[o]besity . . . ([BMI] of 30 or higher" as an "underlying medical condition[]" that puts people of any age at increased risk

---

[15] R. Doc. 1115 at 1.
[16] *Id.* at 9.
[17] *Id.*; R. Doc. 1115-3 at 1 (a medical record indicating that Tyler has hypertension).

5

of severe illness from COVID-19,[18] but medical records indicate that Tyler has a BMI of 31.1,[19] not 40. Tyler's BMI barely exceeds the CDC's threshold for obesity. The CDC also lists "hypertension" as a underlying medical condition that *may* lead to an increased risk of severe illness if one were to contract COVID-19.[20] In the medical records Tyler provides, his health care provider noted that his hypertension was "[u]ncontrolled" by medication before January 22, 2020.[21] On that date, Tyler's physician prescribed medication for his hypertension and also recommended decreased sodium intake.[22] Nothing in the record indicates that Tyler's BMI or hypertension are "terminal" or that they "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, application note 1(A); *see also Thompson*, 984 F.3d at 434 (affirming denial of compassionate release, noting that "nearly half" of American adults have hypertension, rendering the inmate's condition far from "extraordinary").

---

[18]   Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[19]   R. Doc. 1126-5 at 9.
[20]   Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[21]   R. Doc. 1115-3 at 1.
[22]   *Id.*

6

Further, Tyler recently contracted COVID-19 and recovered from his illness. The medical records indicate that Tyler tested positive for COVID-19 on November 18, 2020,[23] and that his case of COVID-19 "resolved" on December 2, 2020.[24] Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who demonstrate "extraordinary and compelling reasons," meriting a reduction of their sentence. *See, e.g.*, *United States v. Powell*, No. 12-20052, 2021 WL 613233, at *4 (E.D. Mich. Feb. 17, 2021); *United States v. Neal*, No. 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020); *United States v. Russo*, No. 16-441, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020). Because defendant has already contracted COVID-19 and recovered, he fails to show that whatever conditions might make him "high risk" have prevented him from recovering from COVID-19 in two weeks or "substantially diminishe[d] [his] ability . . . to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, application note 1.

The heart of Tyler's claim is a generalized fear of COVID-19. But generalized fear of the virus does not rise to an "extraordinary and compelling reason" justifying release. *See, e.g.*, *Thompson*, 984 F.3d at 435

---

[23] R. Doc. 1126-5 at 5.
[24] *Id.* at 21.

7

("Fear of COVID doesn't automatically entitled a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Marco Perez-Serrano*, No. 13-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."). Moreover, FCI Ashland Kentucky reports zero positive COVID-19 cases among the inmate population.[25] The Court finds that Tyler's medical conditions do no constitute extraordinary and compelling reasons meriting compassionate release.

## 2. *Tyler's Family Circumstances*

Tyler next argues that family circumstances merit his compassionate release.[26] The application notes provide that (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" could each amount to "extraordinary

---

[25] Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited February 18, 2021).
[26] R. Doc. 1115 at 9.

8

and compelling reasons" under the compassionate release statute. U.S.S.G. § 1B1.13, application note 1(C).

Here, Tyler argues that both of his parents suffer from severe hypertension and chronic breathing problems.[27] He also asserts that his sister suffers from depression, schizophrenia, and bi-polar disorder.[28]

Even assuming that Tyler could establish the requisite "family circumstances" through these familial relationships,[29] he does not allege that his parents or sister are dead or "incapacitated." For guidance on what constitutes "incapacitation," courts have looked to the BOP's non-binding Program Statement for processing compassionate release requests. *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (looking to the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program

---

[27] *Id.*
[28] *Id.*
[29] The Court notes that Tyler invokes familial relationships—his parents and sibling—not contemplated by the Guidelines. *See* U.S.S.G. § 1B1.13, application note 1(C) (referring only to the defendant's "caregiver of defendant's minor child" and the defendant's "spouse or registered partner").

9

Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well").

The BOP's Program Statement provides two definitions for the word "incapacitation." As to the "the caregiver of the defendant's minor child or minor children," the Program Statement provides: "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."[30] As to the "[t]he incapacitation of the defendant's spouse or registered partner," the Program Statement provides:

> 'incapacitation' means the inmate's spouse or registered partner has: [s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair[; or]
>
> [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.[31]

Plaintiff provides no evidence to suggest that his parents or sisters are afflicted with such serious conditions that they are incapable of caring for themselves.

---

[30] Federal Bureau of Prisons, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 7.
[31] *Id.* at 7, 10.

In addition, courts have held that the "family circumstances" criterion requires that the compassionate-release petitioner be the "only available caregiver" for the incapacitated family member. *See, e.g., United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) ("The animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver."); *United States v. Nevers*, No. 16-88, 2020 WL 3077034, at *7 (E.D. La. June 10, 2020) (noting that the petitioner's family circumstances did not amount to extraordinary and compelling reasons because there were "no indication[s] that Petitioner [was] the only potential caregiver for her mother"); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (granting compassionate release for an inmate who was the "only potential caregiver" for his mother). Tyler does not allege that he is the only potential caregiver for his parents or sister. Accordingly, the Court finds that Tyler's alleged family circumstances do not constitute extraordinary and compelling reasons, meriting compassionate release.

## C. Section 3553(a) Factors

The Court also finds that the Section 3553(a) factors do not support a reduction in Tyler's sentence. When determining whether to modify a sentence under Section 3582(c)(1)(A), the Court must "consider[] the factors set forth in section 3553(a)." *See* 18 U.S.C. § 3582(c)(1)(A). Here, both the "seriousness of the offense" and "the history and characteristics of the defendant" militate against early release. 18 U.S.C. § 3553(a). Tyler was convicted of a serious drug offense, and he has a significant criminal history—Tyler has prior convictions of accessory after the fact to second degree murder and accessory after the fact to attempted second degree murder.[32] The Section 3553(a) factors do not weigh in favor of compassionate release.

## D. Danger to the Community

When ruling on a motion for compassionate release, the Court must assess whether the defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). In making this determination, the Court looks to 18 U.S.C. § 3142(g). *Id.* The factors set out in § 3142(g) are similar to § 3553(a), and include the "nature and circumstances of the offense" and the "the history and characteristics" of the defendant. *Id.* at

---

[32] R. Doc. 877 at 5-6; R. Doc. 1126 at 7.

12

§ 3142(g)(1)-(4). As noted above, these factors weigh against compassionate release. The Court finds that the nature of Tyler's drug offense, in combination with his previous convictions for accessory after the fact to second degree murder (and attempted second degree murder), militate against release.

### E. The Policy Statement

Tyler argues that the policy statement upon which the Court relies, U.S.S.G. § 1B1.3, is not applicable to his, or any, motion for compassionate release filed after 2018.[33] Tyler points out that U.S.S.G. § 1B1.3 was promulgated before Congress passed the First Step Act in 2018, suggesting that the policy statement was not intended to guide courts' analyses of post-First Step Act motions for compassionate release.[34] *See United States v. Mondaca*, No. 89-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (noting that some district courts have concluded that they may "consider anything" outside of U.S.S.G. § 1B1.3 because the Commission's policy statement was not amended after the enactment of the FCA); *United States v. Cantu*, No. 05-458, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019)

---

33 R. Doc. 1115 at 5.
34 *Id.*

13

(reasoning that "the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute").

The Fifth Circuit consistently looks to U.S.S.G. § 1B1.13 for guidance in evaluating post-First Step Act motions for compassionate release. *See Thompson,* 984 F.3d at 433 (noting that "the commentary to the United States Sentencing guidelines § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling'" although the commentary is "not dispositive"); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (noting that "we are guided in our analysis by the commentary for U.S. Sentencing Guidelines § 1B1.13" but that the commentary is "not dispositive"); *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020) (affirming district court's denial of compassionate release when the district court cited and quoted Guideline § 1B1.13 in its decision).

The Sentencing Commission's policy statement does not bind the Court, but it provides a useful framework in evaluating motions for compassionate release, particularly where, as here, the defendant's motion maps directly onto the factors contemplated in U.S.S.G. § 1B1.3—*i.e.* "medical condition of the defendant" and "family circumstances." Further, Tyler does not provide the Court with any other arguments that could

14

establish "extraordinary and compelling reasons," even outside the U.S.S.G. § 1B1.3 framework. He thus provides no other basis for establishing that "extraordinary and compelling circumstances" exist to justify his compassionate release. 18 U.S.C. § 3582(c). "[T]he decision whether to ultimately grant a [sentencing] modification is left to the sound discretion of the trial court." *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011). The Court finds compassionate release unwarranted for Tyler.

### F. Transfer to Home Confinement

Elsewhere in his motion, Tyler uses the locution "transfer to home detention,"[35] in asking the Court for relief. The decision to order home confinement rests solely with the Bureau of Prisons. *See* 18 U.S.C. § 3621(b) (providing that the "Bureau of Prisons shall designate the place of the prisoner's imprisonment" and that "a designation of a place of imprisonment . . . is not reviewable by any court"); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) ("[M]any cases have addressed the authority of a judge to specify the place of incarceration[,]" and "[t]hese cases hold that a court may recommend that a sentence . . . be served in a particular prison or jail, but that only the Bureau of Prisons has the actual authority to designate the place

---

35  *Id.* at 8.

of incarceration."). To the extent Tyler asks the Court for a transfer to home confinement, the Court lacks the authority to grant that relief.

### G. Motion to Appoint Counsel

Tyler also moves for the Court to appoint counsel to assist him with his compassionate release motion.[36] There is no constitutional or statutory right to counsel beyond direct appeal. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). A Court may appoint counsel in a compassionate release proceeding if it finds doing so would be "in the interest of justice." *United States v. Delco*, No. 09-57, 2020 WL 4569670, at * 2 (E.D. La. Aug. 7, 2020); *United States v. Mogan*, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020); *cf. United States v. Moore*, 400 F. App'x 851, at *1 (5th Cir. 2010) ("There is no right to appointed counsel in a § 3582(c)(2) proceeding . . . . Moreover, the interest of justice did not require the appointment of counsel."); *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008) (appointing counsel on appeal to argue unresolved questions of Fifth Circuit law). Because Tyler's motion does not involve complicated or unresolved issues, the interest of justice do not require the appointment of counsel.

---

[36] R. Doc. 1143-1.

## III. CONCLUSION

For the foregoing reasons, Tyler's motion for compassionate release is DENIED and his motion to appoint counsel is DENIED.

New Orleans, Louisiana, this __25th__ day of February, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE